UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| K.Z.,<br><br>               Plaintiff,<br><br>     v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>               Defendant. | Case No. 25-cv-04448-LB<br><br>**ORDER GRANTING PLAINTIFF'S MOTION AND DENYING DEFENDANT'S CROSS-MOTION**<br><br>Re: ECF Nos. 10, 11 |

**INTRODUCTION**

The plaintiff seeks judicial review of a final decision by the Commissioner of Social Security denying her application for Title XVI SSI disability benefits.[1] She contends that the ALJ erred by (1) improperly evaluating the medical opinion of Dr. Laura Jean Catlin, (2) failing to make every reasonable effort to develop the plaintiff's complete medical history, (3) failing to provide clear and convincing reasons for rejecting the plaintiff's subjective symptom testimony, (4) failing to properly analyze her fibromyalgia under SSR 12-2p, and (5) failing to find that the plaintiff meets or equals a listing.[2] The matter is submitted for decision without oral argument. Civil L.R. 16-5. The court remands the case for further administrative proceedings.

---

[1] Compl. – ECF No. 1. Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Pl.'s Br. – ECF No. 10 at 4.

ORDER – No. 25-cv-04448-LB

# GOVERNING LAW

Under 42 U.S.C. § 405(g), district courts have jurisdiction to review any final decision of the Commissioner if the claimant initiates suit within sixty days of notice of the decision. The court's review is limited to whether substantial evidence supports the Commissioner's decision and whether the decision comports with relevant legal standards. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). Substantial evidence is "more than a mere scintilla," but less than a preponderance, and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Kitchen v. Kijakazi*, 82 F.4th 732, 738 (9th Cir. 2023). If the evidence in the administrative record supports both the ALJ's decision and a different outcome, the court must defer to the ALJ's decision and may not substitute its own. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

A claimant is considered disabled if (1) she "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months," and (2) the "impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(A)–(B). The Social Security regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act. *See* 20 C.F.R. § 404.1520. The five steps are as follows:

**Step One.** Is the claimant presently working in a substantially gainful activity? If so, then the claimant is "not disabled" and is not entitled to benefits. If the claimant is not working in a substantially gainful activity, then the claimant's case cannot be resolved at step one, and the evaluation proceeds to step two. *See* 20 C.F.R. § 404.1520(a)(4)(i).

**Step Two.** Is the claimant's impairment (or combination of impairments) severe? If not, the claimant is not disabled. If so, the evaluation proceeds to step three. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

**Step Three.** Does the impairment "meet or equal" one of a list of specified impairments described in the regulations? If so, the claimant is disabled and is entitled to benefits. If the claimant's impairment does not meet or equal one of the impairments listed in the

regulations, then the case cannot be resolved at step three, and the evaluation proceeds to step four. *See* 20 C.F.R. § 404.1520(a)(4)(iii).

**Step Four.**   Considering the claimant's residual functional capacity, is the claimant able to do any work that he or she has done in the past?  If so, then the claimant is not disabled and is not entitled to benefits.  If the claimant cannot do any work he or she did in the past, then the case cannot be resolved at step four, and the case proceeds to the fifth and final step. *See* 20 C.F.R. § 404.1520(a)(4)(iv).

**Step Five.**   Considering the claimant's residual functional capacity, age, education, and work experience, is the claimant able to "make an adjustment to other work?"  If not, then the claimant is disabled and entitled to benefits. *See* 20 C.F.R. § 404.1520(a)(4)(v). If the claimant is able to do other work, the Commissioner must establish that there are a significant number of jobs in the national economy that the claimant can do.  There are two ways for the Commissioner to show other jobs in significant numbers in the national economy: (1) by the testimony of a vocational expert or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R., part 404, subpart P, app. 2.  If the Commissioner meets this burden, the claimant is not disabled.

*Tackett*, 180 F.3d at 1098–99 (citing 20 C.F.R. § 404.1520) (cleaned up). For steps one through four, the burden of proof is on the claimant. At step five, the burden shifts to the Commissioner. *See Tackett*, 180 F.3d at 1098.

## STATEMENT

### 1.  Procedural History

On October 21, 2021, the plaintiff filed an application for Title XVI benefits, alleging disability beginning January 1, 2010.[3] The Commissioner denied the application on July 27, 2022, and on reconsideration on February 15, 2023.[4] On June 5, 2024, a hearing was held before an ALJ who issued an unfavorable decision on July 31, 2024.[5] The Appeals Council denied the plaintiff's request for review on April 23, 2025, making the ALJ's decision the final decision of the Commissioner.[6] The plaintiff timely filed this action on May 27, 2025.[7] All parties have consented to magistrate-judge jurisdiction.[8] 28 U.S.C. § 636(c)(1).

---

[3] AR 18.

[4] AR 18, 177, 184.

[5] AR 15, 18.

[6] AR 1.

[7] Compl. – ECF No. 1 at 1.

[8] Consents – ECF Nos. 7–8.

## 2. Administrative Record

### 2.1    Summary of Medical Records

Between November 2019 and August 2023, the plaintiff had regular psychiatry visits with Dr. Armeen Weber. Her target symptoms during this period remained "anxiety, depression, insomnia, and mood instability."[9] The plaintiff had diagnoses of "major depressive disorder, recurrent severe without psychotic features" and "bipolar disorder, unspecified."[10]

On June 9, 2022, the plaintiff underwent a comprehensive internal medicine evaluation by Dr. Robert Tang that noted "long-term significant mental health diagnoses" and "decades of chronic cervical spine myofascial discomfort." Dr. Tang concluded that the plaintiff (1) had no limitations on standing, walking, and sitting capacity, (2) could carry twenty pounds occasionally and ten pounds frequently, (3) could occasionally climb ladders, and (4) had limits working around heights, heavy machinery, chemicals, dust, fumes, and gases.[11]

On June 13, 2022, the plaintiff received a mental-status disability evaluation by Dr. Aparna Dixit, who concluded that the plaintiff would have no difficulty or impairment with (1) interacting and relating to co-workers and supervisors, (2) maintaining pace and persistence over two-hour increments, or (3) understanding, remembering, and carrying out simple instructions or complex tasks but determined that she may have "mild difficulty dealing with the public in a work like setting."[12]

The plaintiff saw nurse practitioner Nadieh Samiaei at the Davis Street Resource Center every three to four weeks between July and September 2022. She was assessed for depression, right hip pain, pain in both feet, neck pain, and back pain and was referred to a neurosurgeon for additional evaluation and treatment for her neck pain.[13]

---

[9] AR 556–654.

[10] AR 649 (cleaned up).

[11] AR 580–84.

[12] AR 587–89.

[13] AR 599–615.

In May 2023, the plaintiff was referred to Highland Hospital to explore "non-surgical management" for "severe chronic pain."[14] In June 2023, the plaintiff received trigger-point injections to address her chronic-pain disorder, with a plan to authorize aqua therapy, consider repeat trigger-point injections, and follow-up with psychiatry and pain psychology.[15] The plaintiff's chronic-pain symptoms were later diagnosed as fibromyalgia.[16]

In September 2023, Dr. Catlin met the plaintiff to conduct a clinical interview, a Mental Status Examination, the Montreal Cognitive Assessment, the Beck Depression Inventory, and the PTSD Checklist for the DSM-5.[17] During the Mental Status Examination, Dr. Catlin documented that the plaintiff presented as depressed and anxious but otherwise within normal limits.[18] The plaintiff scored the full twenty-two points on the Montreal Cognitive Assessment that assesses concentration, memory, language, conceptual thinking, calculations, and orientation.[19] She scored thirty-three on the Beck Depression Inventory, indicating "symptoms of severe depression" and noting that the plaintiff "does not have enough energy to do the things she knows she should do," "sleeps most of the day but feels fatigued and tired all day," and "often feels agitated and is very irritable."[20]

Dr. Catlin noted in the summary of her assessment that the plaintiff has "low tolerance to stress, struggles with low motivation, and has difficulty regulating her emotions."[21] The plaintiff also has suffered from chronic pain through her body for the last twelve years and is now in so much pain that she requires "the help of an in home care provider with her household chores."[22]

---

[14] AR 784.

[15] AR 772–75.

[16] AR 64, 647.

[17] AR 739.

[18] AR 741.

[19] *Id.*

[20] AR 742.

[21] AR 743.

[22] AR 744.

United States District Court
Northern District of California

Dr. Catlin noted that the plaintiff had no significant cognitive problems during the evaluation.[23] Dr. Catlin stated that it would be "extremely difficult for this claimant to withstand the stress of full or part time work given her emotional vulnerability to change or stress."[24]

The functional assessment listed the plaintiff as having "mild" limitations with understanding, remembering, and applying information and "marked" limitations with (1) interacting with others, (2) concentration, persistence, and pace, and (3) adapting or managing oneself.[25] Dr. Catlin stated that these impairments would lead the plaintiff to miss four or more days of work per month and would be "off task" more than twenty percent of a given day.[26]

## 2.2    The Plaintiff's Testimony

The plaintiff testified that she experiences physical pain "from [her] shoulders all the way down most of the time to [her] feet."[27] There are times when she struggles with basic hygiene due to pain.[28] Chiropractic and acupuncture treatment provide the plaintiff some relief from the pain, but she must go to appointments three times a week, which is draining.[29]

An In-Home Supportive Services (IHSS) worker spends about forty hours per week assisting the plaintiff at her home with "everything," including walking (the plaintiff previously fell while walking back from the grocery store) and when she "can't wipe [her]self on the toilet" because of inflammation in her arms or shoulders.[30] The plaintiff avoids lifting or carrying anything because "there's always going to be some pain right after," and after running an errand, she is unable to do anything else for two days because of the resulting pain.[31] The plaintiff does not like how her

---

[23] *Id.*

[24] AR 744–45.

[25] AR 746–47.

[26] AR 747.

[27] AR 77–78.

[28] AR 78.

[29] AR 79, 90.

[30] AR 80–81, 86–87.

[31] AR 82, 87–88.

medications make her feel groggy and how she is "walk[ing] around like a zombie" the following day.[32] She has trouble sleeping due to pain and is irritable as a result.[33] The plaintiff has been having concentration and memory issues, forgetting to take her medication or brush her teeth and taking two days to finish watching one movie.[34]

### 3.  ALJ Decision

The ALJ followed the five-step sequential process for determining disability. At step one, the ALJ found that the plaintiff had not engaged in substantial gainful activity since her application date.[35]

At step two, the ALJ found the plaintiff had severe impairments of depression, anxiety disorder, degenerative-disc disease of the cervical spine, chronic-pain syndrome/fibromyalgia, degenerative-disc disease of the lumbar spine, degenerative-joint disease of the bilateral feet, asthma, and obstructive sleep apnea.[36]

At step three, the ALJ determined the plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments, including mental impairments for listings 12.04 (depressive, bipolar and related disorders) and 12.06 (anxiety and obsessive-compulsive disorders).[37] The ALJ stated that he had "evaluated the claimant's fibromyalgia consistent with Social Security Ruling 12-2p" but included only the rules without any analysis.[38]

In determining whether the plaintiff met the criteria of listings 12.04 and 12.06, the ALJ assessed whether she met the "paragraph B" criteria, which requires that the plaintiff's mental

[32] AR 80, 83.

[33] AR 83–84.

[34] AR 85, 88.

[35] AR 20–21.

[36] AR 21.

[37] AR 21–24.

[38] AR 22.

impairments "result in one extreme limitation or two marked limitations" in one of four broad areas of functioning: (1) understanding, remembering, or applying information, (2) interacting with others, (3) concentrating, persisting, or maintaining pace, and (4) adapting or managing oneself.[39]

In determining that the plaintiff has a moderate limitation with interacting with others, the ALJ provided the following:

> The claimant reported that she rarely leaves the house recently. She currently lives alone in an apartment. She has never been married and has a 23-year-old child. She is able to take public transportation alone. There are notations that she enjoys spending time by herself. Mental health symptoms include agitation and irritability. She reported feeling lonely and isolated. She endorsed relationship problems with her family and friends. On examination, her eye contact was appropriate. She was noted to be pleasant and congenial. Her speech was clear, coherent, and spontaneous.[40]

For concentrating and persisting or maintaining pace, the ALJ decided that the plaintiff had a moderate limitation and stated,

> the claimant reported her sleep was poor. Sleep was poor due to her constant worry about the future. She stated that she takes naps during the day and watches television. She experienced a surge in panic and worry when she anticipates stress. There were notations that the claimant had low energy, difficulty concentrating, anhedonia, and poor attention. On examination, there were no signs of psychomotor agitation or retardation. She did not have any overt signs of hallucinations or delusions observed. She was able to follow a 3-step command and was able to recall 5 digits forward and backward. She was able to do serial 7s correctly. She was able to spell the word FORGET forward and backward.[41]

The ALJ determined that the plaintiff experienced moderate limitation with adapting or managing herself, noting that

> she can provide for her bathing, grooming, and hygiene in an age-appropriate manner. She can perform household chores such as washing dishes, doing laundry, and taking out the trash. However, she has some difficulties in completing activities of daily living. She can go to the grocery store and can make a simple microwave meal. On examination, she was appropriately dressed and had adequate hygiene and grooming.[42]

---

[39] AR 23.

[40] *Id.* (cleaned up).

[41] *Id.* (cleaned up).

[42] AR 23–24 (cleaned up).

The ALJ concluded that the plaintiff did not meet the criteria for paragraph B because her mental impairments did not cause at least two marked limitations or one extreme limitation.[43]

Between steps three and four, the ALJ assessed the plaintiff's residual functional capacity (RFC) and determined that the plaintiff had the RFC to perform light work with certain limitations.[44] In making this finding, the ALJ found the plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms "not entirely consistent with the medical evidence and other evidence in the record."[45]

The ALJ then summarized a series of the plaintiff's medical appointments. In December 2021, the plaintiff had a primary care clinic visit. The ALJ noted that the plaintiff had reported smoking a half pack of cigarettes each day and symptoms of depression after losing her sister and grandmother.[46] The ALJ continued:

> She reported feelings of anger and lack of motivation. She takes Remeron and Trazodone for sleep and also started on Vraylar, which was noted to help her depression Valium 10 mg. was prescribed for her anxiety. She worries about her son, who is a young black man. On mental status examination, her thought process was linear, logical, lucid, bit not fully logical. She has always heard someone who was not there calling her name. Her memory was noted to be sufficient. Her impulse control was somewhat impaired due to her anger.[47]

At a June 2022 internal medicine consultative examination, the plaintiff stated that she had not worked since 2010 and was "fully able to care for her personal needs and [could] perform light activities of daily living."[48] The ALJ noted that

> on physical examination, her chest and lungs were symmetric with normal excursions. They were clear to auscultation throughout without wheezes, rales, or rhonchi. Her extremities were warm without cyanosis, clubbing, or edema. Her tandem and toe-heel walk were normal. Romberg testing was negative. Her cervical spine was 0 degrees on extension, lateral flexion was 0-10 degrees, and rotation was 0-30

---

[43] AR 24.

[44] *Id.*

[45] AR 25.

[46] *Id.*

[47] *Id.*

[48] AR 26.

degrees bilaterally. Her lumbar region was 0-90 degrees on extension, 0-25 degrees on extension, and 0-25 degrees bilaterally on lateral flexion.[49]

There were no range-of-motion issues with her remaining major joints, no signs of heart failure or pulmonary edema, and her motor strength and grip strength were "5/5."[50]

The plaintiff attended a pain-management appointment due to her chronic pain in May 2023. The ALJ noted that she reported pain "everywhere" and that her symptoms were "aggravated with activities." The ALJ summarized the plaintiff's physical examination:

> On physical examination, there was diffuse tenderness to light palpation throughout her paraspinals and musculature bilaterally. There was mild diffuse myofascial rigidity. Spurling's test was negative bilaterally. Her straight leg raise testing was negative bilaterally. Facet loading was positive bilaterally. There was bilateral SI joint tenderness, and she was hypo-esthetic to light touch around the right knee.[51]

The plaintiff received trigger point injections in June and was also referred to aquatic therapy.[52]

The ALJ summarized a psychological evaluation in October 2023, noting that the plaintiff had symptoms of anhedonia, anxiety symptoms, excessive worry about routine issues, difficulty controlling worry, sleep disturbance, physical symptoms of anxiety, and panic attacks. The plaintiff's mood swings and panic attacks were less frequent than in her teenage years, she was alert, her attention and concentration were adequate, her memory was intact, and her pain, motivation, and energy improved.[53]

The ALJ then considered medical opinion-evidence from the state agency, Dr. Dixit, Dr. Tang, and Dr. Catlin. The ALJ noted that the state agency opinion determined that the plaintiff was capable of "work at the light exertional level."[54] The psychological consultant determined that the plaintiff "had no limitations in understanding, remembering, or applying information; moderate limitations in interacting with others and concentrating, persisting, or maintaining pace; and mild

---

[49] *Id.*

[50] *Id.*

[51] AR 27.

[52] *Id.*

[53] *Id.*

[54] *Id.*

limitations in adapting or managing oneself."[55] The ALJ found the opinions persuasive partly because the consultants were "acceptable medical sources with program knowledge, which personally reviewed the [plaintiff's] medical evidence of record." The ALJ acknowledged the plaintiff's depression and anxiety were "severe impairments based on [her] overall treatment records showing continued mental health symptoms even with treatment."[56]

The ALJ stated that Dr. Dixit completed a psychological consultative examination of the plaintiff in June 2022 and determined that the plaintiff could "understand, remember, and carryout simple instructions with no difficulty," her ability to "remember and carry out detailed and complex tasks" was not impaired, she "may have difficulty dealing with the public" in work, and she should have no difficulty "interacting and relating to co-workers and supervisors" or maintaining pace and persistence over two-hour increments. The ALJ found these opinions to have "limited persuasive value," stating that Dr. Dixit's opinion "was supportive of and consistent with this examination findings but not consistent with the claimant's behavioral health treatment records which demonstrated continued mental health symptoms despite ongoing treatment."[57]

The ALJ found Dr. Tang's June 2022 internal-medicine examination of the plaintiff "mostly persuasive" and "internally supported by the examination and consistent with the claimant's physical treatment records," with the exception that the ALJ limited the plaintiff to occasional reaching. Dr. Tang stated that the plaintiff can lift twenty pounds occasionally and ten pounds frequently, occasionally climb ladders, and can perform other postural limitations frequently. The plaintiff would be limited in working around heights, heavy machinery, chemicals, dust, fumes, and gases.[58]

The ALJ found the opinion of Dr. Catlin "not persuasive," stating that her findings of marked and extreme limitations were "not supportive of or consistent with the totality of the claimant's

---

[55] AR 27–28 (cleaned up).

[56] AR 28.

[57] *Id.*

[58] *Id.*

medical evidence of record and this examination where the claimant scored 22 out 22 on the mental status testing."[59]

At step four, the ALJ found that the plaintiff had no past relevant work.[60]

At step five, relying on the testimony of a vocational expert, the ALJ found that (considering the plaintiff's age, education, work experience, and RFC) jobs exist in significant numbers in the national economy that the plaintiff can perform.[61]

The ALJ thus concluded the plaintiff was not disabled.[62]

**ANALYSIS**

The plaintiff contends that the ALJ's decision is not supported by substantial evidence because he erred by (1) discounting the persuasiveness of Dr. Catlin's evaluation, (2) failing to make every reasonable effort to develop the plaintiff's complete medical history, (3) rejecting the plaintiff's testimony, (4) failing to properly analyze her fibromyalgia, and (5) failing to find that the plaintiff meets or equals a listing.[63] The defendants contest each point. The court remands for reconsideration because the ALJ did not sufficiently address the supportability or consistency of Dr. Catlin's report, failed to explain his discounting of the plaintiff's testimony, and did not evaluate the plaintiff's fibromyalgia.

## 1. Medical Opinion Evidence

The plaintiff argues that the ALJ erred by finding the opinion of Dr. Catlin unpersuasive without assessing supportability or consistency.[64] The defendant counters that the ALJ's decision to discount Dr. Catlin's report is supported by substantial evidence because Dr. Catlin's opinions

---

[59] AR 28–29.

[60] AR 29.

[61] AR 29–30.

[62] AR 30.

[63] Pl.'s Br. – ECF No. 10 at 4.

[64] *Id.* at 7.

United States District Court
Northern District of California

lack support in the administrative record.[65] The ALJ's reasoning is not supported by substantial evidence.

The ALJ is responsible for "resolving conflicts in medical testimony, and for resolving ambiguities." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014). In weighing and evaluating the evidence, the ALJ must consider the entire case record, including each medical opinion in the record, together with the rest of the relevant evidence. 20 C.F.R. § 416.920b; *see Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) ("[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." (cleaned up)).

The Social Security Administration promulgated new regulations governing an ALJ's consideration of medical opinions, effective March 27, 2017. The new framework "eliminate[s] the physician hierarchy, deference to specific medical opinions, and assigning weight to a medical opinion." *V.W. v. Comm'r of Soc. Sec.*, No. 18-CV-07297-JCS, 2020 WL 1505716, at *14 (N.D. Cal. Mar. 30, 2020) (cleaned up); 20 C.F.R. § 416.920c(a). Likewise, the Ninth Circuit's previous "requirement that ALJs provide 'specific and legitimate reasons' for rejecting a treating or examining doctor's opinion" is "incompatible with the revised regulations." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). But the ALJ must still articulate how he or she considered every medical opinion and how persuasive he or she finds each. *Id.*; *V.W.*, 2020 WL 1505716, at *14; 20 C.F.R. § 416.920c(b). Persuasiveness is now evaluated based on five factors: "1) supportability; 2) consistency; 3) relationship with the claimant; 4) specialization; and 5) 'other factors.'" *V.W.*, 2020 WL 1505716, at *13 (citing 20 C.F.R. § 416.920c(c)); *Woods*, 32 F.4th at 792 (factors include "the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's records").

Supportability and consistency are the two most important factors, and the ALJ is required specifically to address them. 20 C.F.R. § 416.920c(b)(2). "[A]n ALJ cannot reject an examining or

---

[65] Def.'s Br. – ECF No. 11 at 5–6.

United States District Court
Northern District of California

treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Kitchen*, 2023 WL 5965704 at *5. Regarding supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1). Regarding consistency, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 416.920c(c)(2).

Unlike with supportability and consistency, the ALJ is not normally required to explain how he or she considered the other factors. *V.W.*, 2020 WL 1505716, at *14; 20 C.F.R. § 416.920c(b)(2). But the ALJ is required to do so where "two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same." 20 C.F.R. § 416.920c(b)(3).

The ALJ's did not perform a proper persuasiveness analysis of Dr. Catlin's report. Dr. Catlin examined the plaintiff and opined, based on a clinical interview and objective testing, that the plaintiff had "marked" and "extreme" limitations in interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing herself.[66] Dr. Catlin also stated that the plaintiff would miss four or more days of work per month and be off task more than twenty percent of the time.[67] The ALJ found her opinions "not persuasive" because the plaintiff "scored 22 out 22 on the mental status testing" and the limitations were not "consistent with the totality of the claimant's medical evidence."[68] But the plaintiff's scoring full marks in mental status (testing focusing on attention and memory) does not negate Dr. Catlin's other determinations, including that the plaintiff's Beck Depression Inventory score indicated severe depression or that she would

[66] AR 746–47.

[67] AR 747.

[68] AR 28–29.

miss four days of work per month.[69] The ALJ's stating that Dr. Catlin's report was not "consistent with the totality of the claimant's medical evidence" is insufficient to support by substantial evidence his decision to discount the report.

### 2.  The Plaintiff's Subjective Testimony

The plaintiff contends that the ALJ failed to provide clear and convincing reasons to reject her testimony about the severity of her symptoms.[70] The defendant asserts that the ALJ reasonably discounted the plaintiff's testimony because it was inconsistent with the objective medical evidence.[71] The ALJ erred in assessing the plaintiff's subjective testimony.

In assessing a claimant's credibility, an ALJ must make two determinations. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012), *superseded by regulation on other grounds as stated in Thomas v. Saul*, 830 F. App'x 196, 198 (9th Cir. 2020). "First, the ALJ must determine whether [the claimant has presented] objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.*; *see also* 20 C.F.R. § 404.1529(a). Second, if the claimant produces that evidence, and "there is no evidence of malingering," the ALJ must provide "specific, clear, and convincing reasons" for rejecting the claimant's testimony regarding the severity of her symptoms. *Molina*, 674 F.3d at 1112 (cleaned up).

"The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102–03 (9th Cir. 2014) (in order to have a meaningful appellate review, the ALJ must explain its reasoning; "[g]eneral findings are insufficient"); *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014). "Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in

---

[69] AR 741–42.

[70] Pl.'s Br. – ECF No. 10 at 12.

[71] Def.'s Br. – ECF No. 11 at 2–5.

testimony or between testimony and conduct, daily activities, and unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." *Orn*, 495 F.3d at 636 (cleaned up); *see* 20 C.F.R. § 416.929. The court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

The ALJ did not sufficiently assess the plaintiff's credibility. The plaintiff testified to debilitating pain, difficulty walking, and the need for an IHSS worker for approximately forty hours per week to assist with basic activities of daily living.[72] She stated that her IHSS worker helps with "everything," including cooking, cleaning, and even wiping after using the toilet because her cervical spine inflammation causes her neck and arms to get "stuck."[73]

The ALJ found that the plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" but discounted her statements about their limiting effects as "not entirely consistent with the medical evidence for the reasons explained in this decision" and discounted her statements about intensity, persistence, and limiting effects because they were "not substantially supported by the medical evidence of record."[74] The ALJ then summarized a series of the plaintiff's medical appointments between December 2021 and October 2023 without explaining why the appointments support finding the plaintiff's testimony not credible.[75] Without providing the analysis behind his determinations, the court cannot find that the ALJ's decision to discount the plaintiff's testimony is supported by substantial evidence.

### 3. Fibromyalgia Analysis

The plaintiff contends that the ALJ failed to analyze her fibromyalgia diagnosis under SSR 12-2p.[76] The defendant agrees that the ALJ did not "provide any analysis of SSR 12-2p" but counters

---

[72] AR 77–80, 86, 90–91.

[73] AR 86–87.

[74] AR 25.

[75] Pl.'s Br. – ECF No. 10 at 14 (making this point).

[76] *Id.* at 15; AR 21–22.

that the ALJ committed no error because there was no objective evidence that the condition precluded work.[77] The ALJ determined that the plaintiff did not have a sufficiently severe impairment at step three without providing analysis or conclusion as to fibromyalgia.[78] This was legal error and prevents meaningful review of the ALJ's decision. *See Vasquez*, 572 F.3d at 591.

## 4.  Remaining Issues

The record-development issue is addressed by remand. Because the court is remanding the case for further proceedings, the appeals issue is moot. Given that the court is remanding for reconsideration of the plaintiff's credibility and fibromyalgia diagnosis, which will affect the ALJ's listing findings and RFC determinations, the court does not address them now.

### CONCLUSION

The court remands the case for further proceedings consistent with this order, including (1) re-evaluating the medical opinion of Dr. Catlin, providing specific and well-articulated reasons under the supportability and consistency framework for the persuasiveness finding, (2) reassessing the plaintiff's subjective testimony, including the corroborating evidence of her 40-hour-per-week IHSS worker, and articulating specific, clear, and convincing reasons for any adverse credibility finding, (3) properly analyzing the plaintiff's fibromyalgia and its functional effects under SSR 12-2p, and (4) conducting any further proceedings as necessary. This order resolves ECF Nos. 10 and 11.

**IT IS SO ORDERED.**

Dated: March 23, 2026

_____
LAUREL BEELER
United States Magistrate Judge

---

[77] Def.'s Br. – ECF No. 11 at 8.

[78] AR 22.